IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01426-WYD-MEH

COUNTRYMAN NEVADA, LLC, a California limited liability company,

      Plaintiff,

v.

DOES 1-7,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is a Motion to Quash or Modify Subpoena and Motion to Dismiss [filed June 19, 2014; docket #18] filed by Defendant John Doe No. 7 (hereinafter, "Defendant"). The motion has been referred to this Court for recommendation. (Docket #20.) The matter is briefed to the extent required by the applicable rules, and the Court finds that oral argument will not assist with adjudication of the motion. For the reasons that follow, the Court respectfully recommends that Defendant's motion be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

I.      **Background**

Plaintiff alleges that the Doe Defendants, identified only by their Internet Protocol ("IP")

addresses, have infringed on Plaintiff's copyrighted work by using the internet and a "BitTorrent"

protocol to reproduce, distribute, display, or perform Plaintiff's protected film.

In an effort to identify the alleged infringers, Plaintiff  requested permission from the Court

to serve limited, immediate discovery on the Defendants' Internet Service Providers ("ISPs") prior

to the Rule 26(f) conference.  (Docket #12.)  The Court determined that Plaintiff had shown good

cause for limited expedited discovery and granted Plaintiff's motion in part. (Docket #14.)  In

particular, the Court authorized Plaintiff to serve third-party subpoenas pursuant to Fed. R. Civ. P.

45 on the identified ISPs for the limited purpose of ascertaining the Defendants' identities  based

on the IP addresses listed in the Complaint.  The Court directed that the subpoenas be limited to

providing Plaintiff with the true name, address, telephone number, and email address of the

Defendants to whom the ISP had assigned an IP address.  With the subpoenas, the Court directed

Plaintiff to serve a copy of its order and the ISP to notify its subscriber of the subpoena and request

for identification.  Finally, the Court emphasized that Plaintiff may only use the information

disclosed in response to the subpoena for the purpose of protecting and enforcing its rights as set

forth in its Complaint [docket #1].  The Court cautioned Plaintiff that improper use of this

information may result in sanctions.

In accordance with the Court's order, Plaintiff served a Rule 45 subpoena on Defendant's

ISP, Comcast, in or about May 2014.  (Motion, docket #18 at 11.)  Defendant filed the present

motion to quash and to dismiss on June 19, 2014, arguing that the Plaintiff has failed to demonstrate

proper joinder of the Defendants and to investigate and identify the "true" copyright infringers.

Defendant also contends the subpoena served on Comcast should be quashed because it is not very likely to identify the actual infringer and, thus, will unduly burden Defendant by causing embarrassment and unwarranted "pressure" from the Plaintiff's attempts to settle.

Plaintiff responds that Defendant fails to meet the requirements of Fed. R. Civ. P. 45 for quashing the subpoena. Plaintiff contends that its need for the identifying information to pursue the infringement claim outweighs any privacy interest the Defendant may have. Plaintiff asserts an IP address is the most effective way to identify a potential infringer, and that courts ruling on the issue have approved of appropriate subpoenas. Further, Plaintiff argues that even if the subscriber is not the actual infringer, the federal court rules allow discovery of the "identity and location of persons who know of any discoverable matter." Finally, Plaintiff contends that Defendant's denial of liability has no bearing on the present motion.

Although provided the opportunity to do so, the Defendant filed no reply brief in support of the motion. The Court is now fully advised and recommends as follows.

## II.     Discussion

### A.     Request to Quash Subpoena

Fed. R. Civ. P. 45(d)(3)(A) requires that the Court quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires excessive travel by a non-party; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. No other grounds are listed.

In this district, a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy issue is implicated. *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("[a]bsent a specific showing of a privilege or

privacy, a court cannot quash a subpoena duces tecum"); *see also Broadcort Capital Corp. v. Flagler Secs., Inc.*, 149 F.R.D. 626, 628-29 (D. Colo. 1993). Other courts in the Tenth Circuit have held that a party has standing to challenge a subpoena served on a third party only on the basis of privilege, personal interest, or proprietary interest. *See, e.g., Howard v. Segway, Inc.*, No. 11-CV-688-GFK-PJC, 2012 WL 2923230, at *2 (N.D. Okla. July 18, 2012) (citing *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18 (D.D.C. 2005)); *see also Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995).

Objections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena. *Windsor*, 175 F.R.D. at 668; *see also Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of New York*, 519 F. Supp. 668, 680 (D.C. Del. 1981) (movant lacks standing to raise objections unrelated to any right of privilege). Thus, even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden. *Howard*, 2012 WL 2923230, at *2 ; *see also Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *8 (E.D. Pa. July 30, 2012) (noting that a defendant seeking to quash a subpoena on an internet service provider "is not faced with an undue burden because the subpoena is directed at the internet service provider and not the [d]efendant.").

Comcast, the recipient of the subpoena, has not objected to its terms. However, Defendant argues that s/he has standing to quash based on a personal and/or proprietary interest in his/her identifying information. Plaintiff does not appear to dispute this interest. Thus, the Court may consider Defendant's motion to quash, but must limit its analysis to whether the subpoena served on Comcast requires disclosure of privileged or other protected matter, if no exception or waiver applies. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).

This Court agrees with those courts finding that internet subscribers do not have an expectation of privacy in the identifying information they conveyed to their ISPs. *See AF Holdings, LLC v. Does 1-162*, No. 11-23036-Civ, 2012 WL 488217, at \*4 (S.D. Fla. Feb.14, 2012); *First Time Videos, LLC v. Does 1-18*, No. 4:11-cv-69-SEB-WGH, 2011 WL 4079177, at \*1 (S.D. Ind. Sept.13, 2011). Thus, Defendant must show the information sought is privileged. The burden rests squarely on the moving party to demonstrate that privilege exists and that the subpoena would disclose such information. *Malibu Media, LLC*, 2012 WL 3089383 at \*5.

In this case, Defendant's motion does not address whether the information sought is privileged or otherwise protected. Instead, Defendant asks the Court to quash the subpoena based on alleged misidentification and the Plaintiff's settlement practices. Defendant asserts "[m]y expectation is the Plaintiff will use the subscriber information obtained from the ISPs to send out settlement letters attempting to scare Doe defendants into paying thousands of dollars to make the case go away, regardless of true guilt or innocence." Motion, docket #18 at 8.

First (and most importantly), the plain language of Rule 45 does not authorize the Court to quash a subpoena based upon alleged misidentification. "[T]he concern that someone else may have somehow gained access to the Doe's computer is essentially a denial of personal liability." *Malibu Media, LLC v. John Does 1-7*, No. 12-1189, 2013 WL 501445, at \*2 (C.D. Ill. Feb. 11, 2013). However, "[a] general denial of liability is not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011). Thus, Defendant's arguments challenging Plaintiff's investigation methods and concerning the accessibility of unprotected wireless routers are premature at this stage of the litigation and more

properly raised during adjudication of the merits of this case. "Without the identifying information to name the Doe Defendants as parties to the lawsuit, the plaintiff would not have 'the opportunity to contest the merits and the veracity of their defenses.'" *Id.* at 251 (quoting *Voltage Pictures, Inc. v. Does 1-5000*, 818 F. Supp. 2d 28, 35 (D.D.C. 2011)).

In fact, Plaintiff's attempt to obtain information from the ISP is a necessary first step in Plaintiff's process of discovering the identities of the alleged infringers for the purpose of enforcing its copyright. The fact that the information Plaintiff seeks will not conclusively establish liability does not persuade the Court that the subpoena should be quashed. To hold otherwise would impose a standard inconsistent with the Federal Rules of Civil Procedure. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including ... the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Here, Defendant does not claim that his identifying information is "privileged" and, as the internet subscriber with an IP address captured by the Plaintiff in investigating potential copyright infringement, Defendant certainly "may know of any discoverable matter," including information that may lead to the identification of the actual infringer.

Defendant's remaining arguments are also insufficient under Rule 45. Though Defendant expresses a concern regarding the fairness of Plaintiff's settlement practices, Rule 45 does not contemplate quashing a subpoena on this basis. Even if it did, however, the Court has not observed nor been made aware of any particular Defendant in the cases before this Court who has experienced "coercive" settlement tactics by the Plaintiff.

As the Court noted in *Maness*, Plaintiff "may be understandably and even reasonably skeptical of a defendant's assertion of innocence." *See Malibu Media, LLC v. Maness*, No. 12-cv-01873-RBJ-MEH, 2012 WL 7848837, at *6 (D. Colo. Dec. 4, 2012). But, even if there is no

ultimate liability, "Plaintiff has a constitutional right to file a lawsuit to and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works," provided Plaintiff has a good-faith basis under Rule 11 for bringing suit. *Id.* Similarly, Plaintiff shares the same right as all litigants to settle or dismiss its claims before engaging in discovery and prior to the filing of any dispositive motions. *Id.* Thus, the Court is not convinced that Defendant has suffered "coercion" by the Plaintiff such as might constitute an "undue burden" under Rule 45.

Equally outside the scope of Rule 45 is a party's concern that being named as a defendant in a federal lawsuit may cause embarrassment and/or injure his or her reputation. Indeed, "it is a rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove." *Malibu Media, LLC*, 2012 WL 3089383, at \*9 (citations and quotations omitted) (declining to quash a subpoena on the basis of a defendant's embarrassment over the pornographic content of the work he allegedly infringed). Here, to ensure his anonymity, the Court has granted Defendant's motion to proceed anonymously in this case. Thus, while the Court acknowledges Defendant's concerns, in this matter, it is ultimately bound by Rule 45 and must only quash a subpoena on the bases cited therein.

In fact, as in this case, to the extent embarrassment at being named in a lawsuit of this type might constitute an "undue burden" pursuant to Rule 45, in an effort to reduce the likelihood of any untoward settlement conduct or undue embarrassment of a Doe defendant, this Court affirms the practice of ISPs withholding a Doe defendant's identifying information pending the resolution of any motion filed by a Doe defendant challenging the subpoena, and typically grants a Doe defendant's well-supported motion to proceed anonymously in the case pending resolution of motions to dismiss, to sever, or to quash.

The Court concludes the Plaintiff has properly demonstrated specificity and good cause in seeking discovery for the identities of purported infringers.   Defendant argues his personal identifying information is insufficient to support a legal claim for direct infringement, since an IP address can be falsified or can identify an entire network of computers, rather than the actual infringer him- or herself.   However, it is undisputed that an ISP assigns its customers IP addresses for the purpose of identifying their customers and the activity they perform on the network.   Thus, it necessarily follows that an ISP "can correlate the Defendant's IP address to the Defendant's true identity" and "the ISPs can use the IP addresses to identify the Defendants."

As for whether Defendant actually copied the registered Work, such is simply an allegation that remains subject to proof through this action.   As in any other action, the Plaintiff need not prove a Defendant committed the alleged wrongdoing before engaging in discovery.   Certainly, through such early discovery, the Plaintiff can obtain information from the named Defendant him- or herself concerning whether the Defendant actually committed the infringement.   The Court concludes its order granting pre-Rule 26 discovery is proper and based on sufficient specificity and good cause demonstrated by the Plaintiff.

B.      Request to Sever for Improper Joinder

Because Defendant questions joinder in this case by pointing to certain aspects of the process used to download a copyrighted work through the BitTorrent program, this Court finds it necessary to explain how BitTorrent works.   Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program.   This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670,

2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used

with the protocol, then describes how BitTorrent operates. *Id.* at \*1-\*3. First, the vocabulary used

in the technology:

> *Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.
>
> *IP Address:* The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File:* A collection of related data packets treated as a unit.
>
> *Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.
>
> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.
>
> *BitTorrent:* A peer-to-peer file sharing protocol.
>
> *Peer:* A BitTorrent user.
>
> *Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).
>
> *Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.
>
> *Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.
>
> *Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.
>
> *Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

> *Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.
>
> *Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at \*1-\*2 (citations omitted).  Judge Ludington proceeds to

describe the protocol and how BitTorrent works:

> BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."
>
> . . .
>
> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."
>
> Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:
>
> 1. Install BitTorrent (or have done so already).
> 2. Surf the web.
> 3. Click on a link to a *.torrent* file.
> 4. Select where to save the file locally, or select a partial download to resume.
> 5. Wait for download to complete.
> 6. Tell downloader to exit (it keeps uploading until this happens).
>
> BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."
>
> "In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."
>
> In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack

for copyright holders:

> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at \*2-\*3 (citations omitted).

The remedy for misjoinder under Federal Rule of Civil Procedure 21 is not dismissal of the action. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."). Rather, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *Id.*

The requirements for permissive joinder of defendants in federal actions are set forth in Federal Rule of Civil Procedure 20(a)(2). Joinder is proper under Rule 20(a)(2) if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." The Court also considers whether joinder would prejudice any party or result in needless delay. *See* Fed. R. Civ. P. 20(b); *see also First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 257 (N.D. Ill. 2011). That is, "[t]he Court may exercise discretion "regarding the proper time to sever parties, and this determination includes consideration of judicial economy and efficiency." *Voltage Pictures, LLC*, 818 F. Supp. 2d at 38.

According to the Supreme Court, courts must interpret the Federal Rules of Civil Procedure to entertain "the broadest possible scope of action consistent with fairness to the parties"; thus, "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v.*

*Gibbs*, 383 U.S. 715, 724 (1966).   Therefore, Rule 20 is construed liberally "to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010).

Here, Defendant primarily challenges joinder pursuant to Fed. R. Civ. P. 20(a)(2) (*see* Motion, docket #18 at 6), arguing that Plaintiff's allegations fall short of demonstrating a right to relief with respect to or arising out of the same transaction or series of transactions and the allegations fail to show any question of law or fact common to all Defendants in this case.   The Court will address each challenge in turn.

1.      Same Transaction or Series of Transactions

The first requirement for joinder is that the claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).   "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *DIRECTV v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).   "[L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." *Sprint Commc'ns. Co. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653 (3d ed. 2001)).

In this case, Defendant's request to sever comes at an early stage of the case before discovery has begun.   The Court finds instructive an opinion by a judge in this District, the Honorable Christine M. Arguello, finding that joinder was proper under Rule 20(a)(2)(A) at an early stage in

a case based upon the same or similar allegations made in this case. *See Patrick Collins, Inc. v. John Does 1-15*, No. 11-cv-02164-CMA-MJW, 2012 WL 415436, at \*2 (D. Colo. Feb. 8, 2012). That is, Judge Arguello concluded that the "Plaintiff has provided enough specificity to make a preliminary determination that the Doe Defendants were part of the same swarm," by alleging that each Defendant directly interacted and communicated with other members of the same swarm, identified by a single alphanumeric hash number, through "digital handshakes," the passing along of computer instructions, and by uploading and downloading the alleged infringed work. *Id.* The Plaintiff in this case makes the same or very similar allegations as those made in *Patrick Collins, Inc. See* docket #1. According to Judge Arguello, "[t]he nature of the BitTorrent protocol requires concerted action by peers in order to disseminate files, such as the [copyrighted] Work, and the Doe defendants allegedly engaged in this concerted action by entering and contributing to the same swarm." *Id.* (citing *First Time Videos, LLC*, 276 F.R.D. at 257).

Likewise, here, the allegations are sufficient to demonstrate that the seven Doe Defendants, all located in Colorado, engaged in downloading and uploading the same file (motion picture) identified by a unique hash number during a relatively short time period. Moreover, Plaintiff alleges a right to relief against all Defendants for both direct and contributory infringement of the motion picture. Thus, the Court recommends finding that Plaintiff's allegations meet the requirements of Rule 20(a)(2)(A).

2.    Common Questions of Law or Fact

As mentioned above, Judge Arguello has analyzed a very similar case and found, with respect to the "common question of law or fact" requirement, "[a]lthough it is conceivable that individual Doe Defendants may assert different factual and legal defenses at a later point, 'that does not defeat, at this stage of the proceeding, the commonality in facts and legal claims that support

joinder under Rule 20(a)(2)(B).'" *See Patrick Collins, Inc.*, 2012 WL 415436, at *3(quoting *Call*

*of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 342 (D.D.C. 2011)).  In that case,

Judge Arguello determined that to recover from each of the 15 putative defendants under the

Copyright Act, the plaintiff would need to establish it is the owner of the alleged infringed work,

that "copying" has occurred, and that entering a swarm constitutes a willful act of infringement. *Id.*

Moreover, Judge Arguello recognized common factual issues in the plaintiff's allegation that the

Doe defendants used the same BitTorrent protocol to download and distribute the work, including

"'how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect

evidence about the infringing activity.'" *Id.* (quoting *Patrick Collins, Inc. v. Does 1-2,590*, No. C

11-2766 MEJ, 2011 WL 4407172, at *6 (N.D. Cal. Sept 22, 2011)).  Like that case, the present

matter requires proof of the same elements against each Defendant and involves the same allegations

concerning the Defendants' use of the BitTorrent protocol.  Therefore, the Court recommends

finding that Plaintiff has met the requirements of Rule 20(a)(2)(B).

Notably, Defendant fails to articulate why the present matter deserves different treatment

than the case adjudicated by Judge Arguello.  In fact, this Court finds that joinder at an early stage

of the litigation in these types of cases promotes judicial efficiency and economy.  *See Patrick*

*Collins, Inc.*, 2012 WL 415436, at *1("[T]he Court may exercise discretion in determining whether

to sever defendants, and this determination includes a consideration of judicial economy and

efficiency.").  This case was filed on May 20, 2014.  Severing Defendants now would delay, but not

eliminate, Plaintiff's efforts to obtain Defendant's identifying information from the ISP.  Simply put,

severance affects the timing of disclosure but not the underlying right.  In this context, such a delay

may prove fatal to Plaintiff's claims insofar as Plaintiff alleges that the information it seeks is

subject to destruction.  (Docket #12 at 18.)  Given the inevitable disclosure of the information at

issue in the subpoena, it seems judicial efficiency is best promoted by declining to reach the question

of joinder at this time. *See Patrick Collins, Inc.*, 2012 WL 415436, at *4 ("joinder of the Doe

Defendants 'facilitates jurisdictional discovery and expedites the process of obtaining identifying

information, which is prerequisite to reaching the merits of [Plaintiff's] claims.'") (quoting *Voltage

Pictures, LLC*, 818 F. Supp. 2d at 38).  Conversely, Defendant proffers no persuasive argument that

the Court will be inconvenienced or that he will be unduly prejudiced by the joinder of seven Doe

defendants at the early stage of litigation.

Other courts have found dismissal improper on the grounds of misjoinder during the early

stages of litigation.  *See, e.g., Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 169 (E.D.

Mich. 2012), *recommendation adopted by Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319

(E.D. Mich. 2012); *see also Malibu Media, LLC v. Does 1-14*, 287 F.R.D. 513, 522 (N.D. Ind.

2012);  *Malibu Media, LLC v. Does 1-25*, No.12-cv-0362-LAB (DHB), 2012 WL 2367555, at *3

(S.D. Cal. June 21, 2012); *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 11 (D.D.C. 2008)

("While the Court notes that the remedy for improper joinder is severance and not dismissal, ... the

Court also finds that this inquiry is premature without first knowing Defendants' identities and the

actual facts and circumstances associated with Defendants' conduct.").

Accordingly, the Court concludes that Defendant has failed to demonstrate why the District

Court should dismiss him as a party or sever Plaintiff's claims against him at this time, and

recommends that the District Court deny Defendant's motion.  Should discovery proceed in this

case, it is possible to address any administrative challenges or undue prejudice to the parties at that

time.

## V.      Conclusion

For the reasons stated above, the Court finds that Defendant has not met his/her burden of

showing that severance pursuant to Fed. R. Civ. P. 21 is proper at this stage of the litigation, and that

the subpoena should be quashed pursuant to Fed. R. Civ. P. 45.  Therefore, the Court respectfully

recommends that the Motion to Quash or Modify Subpoena and Motion to Dismiss [filed June 19,

2014; docket #18] filed by Defendant John Doe No. 7 be **denied**.

Entered and dated at Denver, Colorado, this 21st day of August, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge